UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER D. COUSINO,

        Petitioner,

                        Case No. 11-11813

v.

                        Honorable Patrick J. Duggan

CINDI CURTIN,

        Respondent.

_____/

## OPINION & ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, & DENYING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL

Petitioner Christopher Cousino, a Michigan Department of Corrections prisoner currently confined at the Kinross Correctional Facility in Kincheloe, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, Petitioner challenges his conviction – secured by way of a no contest plea in the Genesee County Circuit Court – for second-degree murder in violation of Michigan Compiled Laws § 750.317, and his resulting sentence of imprisonment for a term of 125 months to 25 years. In contending that he is being held in violation of his constitutional rights, Petitioner raises claims concerning the validity of his plea and the effectiveness of defense counsel. For the reasons stated herein, the Court denies the habeas petition. The Court also

denies a certificate of appealability and denies leave to proceed *in forma pauperis* on appeal.

## I.    FACTUAL AND PROCEDURAL BACKGROUND[1]

Petitioner's conviction arises from the death of Charles Easter, his older, partially-disabled roommate, following a physical altercation at their home in Burton, Michigan on February 27, 2008.   The altercation, which began as a verbal quarrel, but escalated to a physical fight after Mr. Easter threatened to evict Petitioner from the home.  Petitioner suffered a minor stab wound, which, according to the preliminary examination testimony of James Padgett, Petitioner's long-time acquaintance and cellmate at the Genesee County Jail, was self-inflicted so Petitioner could claim that he was acting in self-defense.  (10/22/08 Hrg. Tr. 25, 26, 31, ECF No. 10-3.)  Despite his injury, Petitioner drove Mr. Easter to the hospital and dropped him off there.  (4/21/09 Plea Hrg. Tr. 19-20, ECF No. 10-13.) Mr. Easter never left the hospital alive.

Dr. Kamir Virani, a board-certified forensic pathologist who performed an autopsy on Mr. Easter on February 28, 2008, offered expert testimony during the preliminary examination as to Mr. Easter's cause of death.  This testimony

---

[1] The facts surrounding the offense of conviction are taken from the testimony establishing a factual basis for Petitioner's plea.  Because Petitioner "blacked out and lost himself for a minute" and therefore could not recall exactly what happened during the altercation (which explains the no contest plea), the factual basis for the plea was supplied by the preliminary examination transcript. (4/21/09 Plea Hrg. Tr. 24, 13-14, ECF No. 10-13.)

indicated that Mr. Easter "had several bruises visible on his face, on his forehead, a bruise on the left side of the upper abdomen, a laceration on the left side of the face, external impacts." (*Id.* at 20.)  He further explained that an internal examination revealed that Mr. Easter suffered "a fracture of the nasal bone, the maxilla sinus, and the eye socket, . . . fractures of the left and right side ribs, five ribs being broken, bruising on the lungs." (*Id.*)  Dr. Virani testified "[t]hat because of the injuries on the face and broken nose[, Mr. Easter] was bleeding in his air passages, aspirated a lot of blood in his lungs," (*id.* at 20), which the doctor described as drowning in one's own blood, (10/22/08 Hrg. Tr. 11), and which caused Mr. Easter to lose consciousness, (4/21/09 Plea Hrg. Tr. 21).  The injuries Mr. Easter sustained were reported as blunt force and blunt force injuries that could be inflicted by human hands.  (4/21/09 Plea Hrg. Tr. 21.)  Dr. Virani determined Mr. Easter's cause of death to be blunt force facial and chest trauma and concluded that the manner of death was homicide.  (*Id.*)

Petitioner was ultimately charged with first-degree murder in connection with Mr. Easter's death, but pleaded no contest (due to lack of memory) to second-degree murder as part of a written plea agreement in which he would not be charged as a second habitual offender but would be sentenced using Michigan's sentencing guidelines on the HO2 line of the C grid for manslaughter.  At the plea hearing, the prosecutor specifically explained, and defense counsel agreed, that:

> As part of the sentencing, your Honor, the People agree to have the Defendant sentenced on the C, also known as the manslaughter grid, using the HO2 line for that grid, for the minimum sentence guidelines to be set.   However, the Defendant will not be required to acknowledge habitual offender second status.

(*Id.* at 4.)  Petitioner indicated that he understood the agreement and that it was complete and accurate.  (*Id.* at 5.)  Petitioner acknowledged the rights that he was giving up by entering his plea, confirmed that he wanted to plead no contest, and agreed that he had not been promised anything else in exchange for his plea.  (*Id.* at 7-9, 14-16, 27.)

On June 1, 2009, the trial court sentenced Petitioner to a period of incarceration not less than 125 months and not more than 25 years.  (6/1/09 Sent'g Hr. Tr. 30, ECF No. 10-14.)  Prior to the imposition of the sentence, Petitioner expressed concern about being sentenced on the HO2 line of the manslaughter grid because it was purportedly his understanding that he would not be sentenced as a second habitual offender.  (*Id.* at 10-14.)  However, following explanations about the terms of the plea agreement from both the court and counsel, Petitioner stated, "That's all, your Honor.  That's fine with me."  (*Id.* at 15.)

Following his plea and sentencing, Petitioner filed a motion to withdraw his plea with the trial court claiming that he did not understand the sentencing aspect of his plea agreement, that Mr. Easter suffered some of his injuries in a prior bar fight, and that the prosecutor failed to disclose potentially exculpatory medical

records.  The trial court denied the motion finding that Petitioner got exactly what he bargained for with his plea agreement and that the disclosed autopsy report revealed Mr. Easter's medical condition.  (12/14/09 Hrg. Tr., ECF No. 10-15.)

Petitioner filed a delayed application for leave to appeal with the Michigan Court of Appeals asserting that his plea was not knowing and voluntary and that trial counsel was ineffective.  The Michigan Court of Appeals denied leave to appeal for lack of merit in the grounds presented, *People v. Cousino*, No. 295921 (Mich. Ct. App. March 23, 2010) (unpublished), and subsequently denied Petitioner's motion for reconsideration, *People v. Cousino*, No. 295921 (Mich. Ct. App. May 5, 2010) (unpublished).  Petitioner filed an application for leave to appeal with the Michigan Supreme Court raising the same claims, which the court denied in a standard order explaining that "we are not persuaded that the questions presented should be reviewed by this Court."  *People v. Cousino*, 488 Mich. 854, 787 N.W.2d 494 (2010).  Petitioner also filed a supplemental brief with the Michigan Court of Appeals raising additional claims, which was treated as another delayed application for leave to appeal.  The Michigan Court of Appeals again denied leave to appeal for lack of merit in the grounds presented.  *People v. Cousino*, No. 296539 (Mich. Ct. App. July 26, 2010) (unpublished).  Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied.  *People v. Cousino*, 488 Mich. 995, 791 N.W.2d 442 (2010).

Petitioner then filed a federal habeas petition raising the following claims:

I.      The trial court committed reversible error by denying him an opportunity to withdraw his no contest plea.

II.     Defense counsel failed to perform a proper investigation, failed to file motions, induced an involuntary plea, and failed to object to a legal error in calculating the sentencing guidelines.

(ECF No. 1.)  Respondent answered the petition contending that it should be denied for lack of merit, (ECF No. 9), and Petitioner filed a reply, (ECF No. 12).

## II.     STANDARD OF REVIEW

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Pub. L. No. 104-132, 110 Stat. 1214.  In order to grant relief, this Court must conclude that the Michigan court's decision "with respect to any claim that was adjudicated on the merits in State court proceedings" was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[]" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

The Supreme Court has fleshed out the meanings of the two clauses contained in 28 U.S.C. § 2254(d)(1).  "A state-court decision is contrary to clearly established federal law if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of [the

Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Murphy v. Ohio*, 551 F.3d 485, 493-94 (6th Cir. 2009) (quoting *Williams v. Taylor*, 529 U.S. 362, 405, 120 S. Ct. 1495, 1519 (2000) (alterations in original) (internal quotation marks omitted)).  Alternatively, "[i]f the state court identifies the correct governing legal principle . . . , habeas relief is available under the unreasonable application clause if the state court unreasonably applies that principle to the facts of the prisoner's case or unreasonably extends or unreasonably refuses to extend a legal principle from the Supreme Court precedent to a new context." *Akins v. Easterling*, 648 F.3d 380, 385 (6th Cir. 2011) (internal quotation marks and alterations omitted).  A federal court may not find a state court's application of Supreme Court precedent unreasonable if it is merely "incorrect or erroneous.  [Rather, t]he state court's application must have been 'objectively unreasonable.'" *See, e.g.*, *Wiggins v. Smith*, 539 U.S. 510, 520-21, 123 S. Ct. 2527, 2535 (2003) (citations omitted).

As suggested by the above-quoted language, AEDPA's standard of review is "difficult to meet . . . [as it is a] highly deferential standard." *Cullen v. Pinholster*, 563 U.S. __, __, 131 S. Ct. 1388, 1398 (2011).  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411, 120 S. Ct. at 1522.  "Rather, it is the

7

habeas applicant's burden to show that the state court applied [Supreme Court precedent] to the facts of his case in an objectively unreasonable manner." *Woodford v. Visciotti*, 537 U.S. 19, 25, 123 S. Ct. 357, 360 (2002). This burden is a high one as "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. __, __, 131 S. Ct. 770, 786 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S. Ct. 2140, 2150 (2004) (per curiam)). The Supreme Court has emphasized that it "bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75, 123 S. Ct. 1166, 1174-75 (2003)).

Lastly, a state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. *Id.* Moreover, habeas review of claims adjudicated on the merits in state courts is "limited to the record that was before the state court." *Pinholster*, 131 S. Ct. at 1398.

In the instant action, the state trial court denied Petitioner's motion to withdraw his plea, finding that his plea comported with his written plea agreement and was knowing, intelligent, and voluntary. The state appellate courts both denied leave to appeal. Determining whether a state court's decision resulted from

8

an unreasonable legal or factual conclusion, as would warrant federal habeas relief, does not require that there be an opinion from the state court that explains the state court's reasoning. *Harrington,* 131 S. Ct. at 784. "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Id.* In fact, when a habeas petitioner has presented a federal claim to a state court and that state court has denied relief, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 784-85. This presumption may be overcome only when there is a reason to think that some other explanation for the state court's decision is more likely. *Id.* at 785. In the present case, then, AEDPA's deferential standard of review applies to Petitioner's case because the standard orders issued by both Michigan appellate-level courts amount to decisions on the merits. *Werth v. Bell,* 692 F. 3d 486, 492-94 (6th Cir. 2012).

### III.   ANALYSIS

**A.   Plea Withdrawal Claims**

Petitioner asserts that he is entitled to habeas relief because the trial court erred in denying him the opportunity to withdraw his no contest plea. As support, Petitioner asserts a litany of specific problems with his plea, which if true, would show that his plea was not made voluntarily, knowingly, and intelligently. The

9

specific objections raised by Petitioner are as follows: he was on medication at the time of his plea, thus rendering the plea unknowing; the plea agreement was ambiguous; the prosecutor breached the plea agreement or the agreement was illusory; his confusion regarding the sentencing aspect of the agreement rendered the plea unintelligent; he was coerced into pleading; and the trial court imposed an unidentified sentencing departure above the applicable guideline range therefore depriving him of the benefit of his bargain.

The United States Constitution does not afford criminal defendants an absolute right to withdraw a guilty plea. *Shanks v. Wolfenbarger*, 387 F. Supp. 2d 740, 745, 748 (E.D. Mich. 2005) (internal citations omitted). Therefore, unless a plea violates a clearly-established constitutional right, state courts have discretion regarding whether or not to permit a defendant to withdraw a plea. *Adams v. Burt*, 471 F. Supp. 2d 835, 843 (E.D. Mich. 2007) ("[T]he decision to permit a defendant to withdraw a plea invokes the trial court's discretion. A trial court's abuse of discretion generally is not a basis for habeas corpus relief.") (internal citations omitted); *Hoffman v. Jones*, 159 F. Supp. 2d 648, 655 (E.D. Mich. 2001).[2]

---

[2] To the extent Petitioner's claim rests on a belief that the trial court abused its discretion in denying his motion to withdraw his plea, the Court notes that such a claim is not cognizable on habeas review because it is a state law claim and federal habeas courts have no authority to correct perceived errors of state law. *Estelle v. McGuire*, 502 U.S. 62, 67-58, 112 S. Ct. 475, 480 (1991); *Serra v. Mich. Dep't of Corr.*, 4 F.3d 1348, 1354 (6th Cir. 1993).

Because guilty pleas operate as a waiver of constitutionally-protected rights,[3] in order to comport with the Constitution, pleas must be made "voluntarily, knowingly, and intelligently, 'with sufficient awareness of the relevant circumstances and likely consequences.'" *Bradshaw v. Stumpf*, 545 U.S. 175, 183, 125 S. Ct. 2398, 2405 (2005) (quoting *Brady v. United States*, 397 U.S. 742, 748, 90 S. Ct. 1463, 1469 (1970)). "The identical standard applies to a plea of no contest or *nolo contendere*." *Spikes v. Mackie*, No. 11-2451, 2013 U.S. App. LEXIS 22941, at *19 (6th Cir. Nov. 7, 2013) (unpublished) (citing *Fautenberry v. Mitchell*, 515 F.2d 614, 636-37 (6th Cir. 2008)).

For a guilty or no contest plea to be voluntary, the defendant must be "fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel[.]" *Brady*, 397 U.S. at 755, 90 S. Ct. at 1472 (citation omitted). Further, the plea must not have been "induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or . . . promises that are by their nature improper as having no proper relationship to the prosecutor's business (*e.g.*[,] bribes)." *Id.* (citation omitted). A criminal defendant must also be aware of the maximum sentence that can be imposed for the crime to

---

[3] "A defendant who enters [a guilty or no contest plea] simultaneously waives several constitutional rights, including his privilege against compulsory self-incrimination, his right to trial by jury, and his right to confront his accusers." *McCarthy v. United States*, 394 U.S. 459, 466, 89 S. Ct. 1166, 1171 (1969).

which he is pleading.  *King v. Dutton*, 17 F.3d 151, 154 (6th Cir. 1994).  The

voluntariness of a guilty or no contest plea is determined in light of all relevant

circumstances surrounding the plea.  *Brady*, 397 U.S. at 749, 90 S. Ct. at 1469

(citations omitted).

A guilty or no contest plea is intelligent and knowing where there is nothing

to indicate that the defendant is incompetent or otherwise not in control of his or

her mental faculties, is aware of the nature of the charges, and is advised by

competent counsel.  *Id*. at 756, 90 S. Ct. at 1473.

On direct review, the state possesses the burden of showing that a plea was

voluntary and intelligently made.  *See generally Boykin v. Alabama*, 395 U.S. 238,

89 S. Ct. 1709 (1969).  "When a defendant subsequently brings a federal habeas

petition challenging his plea, the state generally satisfies its burden by producing a

transcript of the state court proceeding."  *Garcia v. Johnson*, 991 F.2d 324, 326

(6th Cir. 1993).  Thus, if the state presents a plea-proceeding transcript which

suggests the plea was both voluntary and knowing, a habeas petitioner seeking to

challenge the plea on constitutional grounds bears a "heavy burden[.]"  *Id*. at 328.

This is because a state court's factual findings regarding the propriety of a plea are

entitled to a presumption of correctness on habeas review.  28 U.S.C. § 2254(e)(1)

(providing that state court determinations of factual issues are presumed correct

unless the habeas petitioner rebuts the presumption by "clear and convincing

12

evidence").  Thus, in a sense, "a presumption of correctness attaches . . . to the judgment itself."  *Spikes*, No. 11-2451, 2013 U.S. App. LEXIS 22941, at *20 (citation omitted).  Conversely, if "the transcript is inadequate to show that a plea was voluntary and intelligent, the presumption of correctness no longer applies." *Garcia*, 991 F.2d at 327.

After reviewing the state court record, this Court finds that Petitioner knowingly and voluntarily entered the no contest plea.  At the conclusion of the plea hearing and after having conducting the plea colloquy, the trial judge accepted the plea, specifically noting that it was "made understandingly, voluntarily, accurately, and knowingly."  (4/21/09 Plea Hrg. Tr. 27.)  At the post-sentencing motion hearing at which Petitioner, through counsel, sought to withdraw his earlier plea, the trial judge once again stated that "this was a plea that was entered understandingly, voluntarily[,] and . . . knowingly[.]"  (12/14/09 Hrg. Tr. 20.) Referring to the plea agreement, the trial judge explained that Petitioner "got just what he bargained for."  (*Id.* at 20.)  The state trial court's factual finding that the plea was voluntary and knowing, which is presumptively correct, is further supported by the record.

At the April 21, 2009 plea hearing, which took place the day trial was set to commence, Petitioner was thirty-two years of age and had basic familiarity with the criminal justice system due to a prior felonious assault conviction.  There is no

evidence that he suffered from any physical or mental problems which would have impaired his ability to understand the criminal proceedings or the nature of his plea.  Although Petitioner claims that he was on Vicodin at the time of his plea, and that this inhibited his understanding of the proceedings, he has not shown that the medication affected his judgment.[4]  A review of the plea hearing transcript reveals that Petitioner responded appropriately to the court's questions[5] and that no one at the hearing, including Petitioner or Petitioner's counsel, expressed concern about Petitioner's ability to comprehend the proceedings.  Moreover, Petitioner did not raise this concern at the plea hearing, at the sentencing hearing, or at the plea withdrawal hearing, but first raised it in his *pro se* supplemental brief on appeal. Petitioner has not shown that his medication impaired his ability to understand the plea proceedings.

At the plea hearing, the prosecution explained to the court that Petitioner was originally "charged . . . with one count of homicide murder in the first degree, premeditated[, a] felony carrying a maximum term of life."  (4/21/09 Plea Hrg. Tr.

---

[4] Petitioner provided evidentiary support for his claim that he was prescribed Vicodin at the time of the plea hearing.  (Pet. Ex. G.)

[5] It has been said that "there is no requirement that in order to rely on a defendant's answers in a guilty-plea colloquy[,] to conclude that the defendant pleaded guilty knowingly and voluntarily, those answers must be lengthy and all-encompassing; a straightforward and simple 'Yes, your Honor' is sufficient to bind a defendant to its consequences."  *United States v. Jones*, 403 F.3d 817, 824-25 (6th Cir. 2005) (citation omitted) (alteration in original).

2:11-cv-11813-PJD-MJH   Doc # 33   Filed 02/18/14   Pg 15 of 32   Pg ID 1248

3.)  The original charging document also included a "habitual offender second notice, indicating th[at Petitioner] ha[d] at least one prior felony."  (*Id.*)  The prosecutor specifically explained, and defense counsel agreed, that Petitioner would plead to a reduced charge of second-degree murder (a felony carrying a maximum prison term of life), would not be required to acknowledge his second habitual offender status, but would be sentenced on the HO2 line of the C grid for manslaughter.  (*Id.* at 4.)  Contrary to Petitioner's claims, this plea agreement was not ambiguous.  (Pet. 23.)  Petitioner acknowledged at the plea hearing that he had been advised of the terms of the plea agreement, that the agreement was complete and accurate, and that he understood the terms of the agreement.  (4/21/09 Plea Hrg. Tr. 5.)  Petitioner was advised of the maximum penalties for the charge and the rights that he would be waiving by entering a plea.  (*Id.* at 7-9.)

Petitioner contends that the reason he accepted the plea was because he was assured that he would not be sentenced as a second habitual offender.  (Pet. 14.) Because he was ultimately sentenced using the HO2 line on the manslaughter grid, he contends that the prosecutor breached the plea agreement.  (*Id.* at 14-15.)  In *Santobello v. New York*, the Supreme Court of the United States held that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled."  404 U.S. 257, 262, 92 S. Ct. 495, 499 (1971).  *Santobello* only

applies to promises that induce a defendant to enter the plea. *Mabry v. Johnson*, 467 U.S. 504, 507-08, 510, 104 S. Ct. 2543, 2546, 2548 (1984). The appropriate remedy for the government's breach of a plea agreement is either specific performance of the agreement or an opportunity to withdraw the plea. *Santobello*, 404 U.S. at 263, 92 S. Ct. at 499.

Petitioner has not shown that the government breached any promise or agreement. Rather, the plea hearing transcript and written plea agreement both indicate that Petitioner pleaded no contest to second-degree murder in exchange for an agreement that he not be required to acknowledge habitual offender status and that he be sentenced on the HO2 line on the C grid for manslaughter. That is exactly what transpired. Petitioner has failed to establish a *Santobello* violation.

Relatedly, Petitioner contends that the plea agreement was illusory because his attorney informed him that he would receive a sentence of "43 to 86 months to 15 year[s] max[imum.]" (Pet. 14.) These were the terms of the plea as Petitioner allegedly understood them. A plea agreement is deemed involuntary and unknowing if a defendant is unaware that the prosecution's promise is illusory. *United States v. Randolph*, 230 F.3d 243, 250-51 (6th Cir. 2000). Illusory representations made by the prosecutor to induce a defendant to waive his right to trial and enter a plea have been found to constitute coercion justifying the

16

withdrawal of a plea. *Spearman v. United States*, 860 F. Supp. 1234, 1249 (E.D. Mich. 1994).

As noted above, the prosecution agreed to dismiss the original first-degree murder charge, which carried a mandatory nonparolable life sentence. The prosecution also did not require Petitioner to acknowledge his second habitual offender status on the record. The prosecution made no promises regarding the length of any sentence. Petitioner was promised the reduction of charges which resulted in a real, tangible benefit in consideration for the plea; the Court therefore concludes that the plea agreement was not illusory. *McAdoo v. Elo*, 365 F.3d 487, 498 (6th Cir. 2004) (where a defendant receives the "bargained for benefit" the plea is not illusory and he is not entitled to habeas relief).

To the extent Petitioner claims his trial counsel misled him into believing that he would receive a lesser sentence than the one the court actually imposed, a "state trial court's proper colloquy can be said to have cured any misunderstanding [a habeas petitioner] may have had about the consequences of his plea." *Ramos v. Rogers*, 170 F.3d 560, 565 (6th Cir. 1999). The United States Court of Appeals for the Sixth Circuit has repeatedly rejected claims by habeas petitioners to set aside pleas due to "sentence confusion" where the plea transcript evidences that the petitioner stated on the record that he is pleading of his own free will and that no additional promises not placed into the record were made to induce the plea.

*Spikes*, No. 11-2451, 2013 U.S. App. LEXIS 22941, at *23 (citing *Ashbaugh v. Gundy*, 244 F. App'x 715, 717-18 (6th Cir. 2007) and *Alford v. Brigano*, 67 F. App'x 282, 285 (6th Cir. 2003)).  A court may not rely on a petitioner's alleged "subjective impression[s]" "rather than the bargain actually outlined in the record," for to do so would render the plea colloquy process meaningless. *Ramos*, 170 F.3d at 566; *Boyd v. Yukins*, 99 F. App'x 699, 703 (6th Cir. 2004) ("We are generally wary of a defendant's post hoc claims that she or he subjectively believed the plea agreement to be different.").  Petitioner has not provided this Court with any evidence in support of his claim that he did not understand the bargain he was receiving at the time he entered the no contest plea.[6]  *See Garcia*, 991 F.2d at 328 (holding that a plea hearing transcript suggestive of a knowing and voluntary plea creates a "heavy burden" for a habeas petitioner seeking to withdraw his plea).

Petitioner also argues that his plea was coerced with "defense counsel, [the] prosecutor, [the trial] judge[,] and [his own] mother [all taking] part in the coercion."  (Pet. 21.)  Petitioner claims that he had previously rejected offers to

---

[6] Petitioner contends that he was confused as to the consequences of the plea he was entering because the agreement provided that the prosecution would not seek HO2 status but provided that Petitioner would be sentenced on the HO2 line of the manslaughter grid and, according to Petitioner, these conditions are contradictory.  (Pet. 23; *see also* 6/1/09 Sent'g Hrg. Tr.10-14.)  However, Petitioner made no objections to these terms at the time of his plea.  Furthermore, after Petitioner's attorney showed Petitioner "the actual guidelines for second degree murder[,]" Petitioner agreed to "move on from" his objection to the court's use of the HO2 line on the manslaughter grid.  (6/1/09 Sent'g Hrg. Tr. 13-16.)

18

plea but that he accepted the plea, at least in part, because his attorney sent him a letter, indicating that he "would serve no more than 43 to 107 months to 15 years max[.]" (*Id.* at 21-22; *id.* Exs. H (4/4/09 Letter), J (Aff. of Pet'r's mother).) This claim, however, is defeated by the fact that Petitioner stated on the record at the plea hearing that nobody had made any promises that had not been stated on the record to induce the plea and that the choice to plead was his own. (4/21/09 Plea Hrg. Tr. 9.) Bare allegations that Petitioner was coerced into pleading guilty are insufficient to overcome the presumption of verity which attaches to Petitioner's sworn statements during the plea colloquy.

To summarize thus far, Petitioner received benefits, as to charges and sentencing, of his bargain. At the time of his plea, Petitioner indicated that he understood the terms of the plea, that he was pleading no contest of his own free will, and that he had not been promised anything else or threatened to induce his plea. He subsequently signed a written plea form. Petitioner has not shown that his no contest plea was unknowing or involuntary. The fact that he was subsequently dissatisfied with his plea or sentence and may have hoped for more lenient treatment does not render his plea unconstitutional. *See Brady*, 397 U.S. at 757, 90 S. Ct. at 1473-74. While "indeed unfortunate if [Petitioner] truly believed []he would only have received a maximum of fifteen years in prison by pleading

19

[no contest]," his "impressions of the sentence []he should have received cannot overcome [his] on-the-record statements to the court." *Yukins*, 99 F. App'x at 703. Petitioner has failed to rebut the strong presumption created by the state court's plea hearing transcript. As such, the Court finds that the Michigan courts did not violate or unreasonably apply clearly established law in denying Petitioner's motion to withdraw his no contest plea.

Petitioner's final argument in support of his position that the state trial court erred in not permitting him to withdraw his plea is that the trial court imposed an unidentified sentencing departure above the applicable guideline range. Because a state trial court's sentencing decision is a matter of state law, claims arising out of sentencing decisions are not generally cognizable on federal habeas review unless the petitioner shows that the sentence imposed "exceeds the statutory limit" or is "wholly unauthorized by law." *Austin v. Jackson*, 213 F.3d 298, 300-01 (6th Cir. 2000) (citation omitted). Because state courts are the final arbiters of state law, principles of federalism preclude federal courts from intervening into such matters when no federal right is at issue. *Bradshaw v. Richey*, 546 U.S. 74, 76, 126 S. Ct. 602, 604 (2005) ("[A] state court's interpretation of state law . . . binds a federal court sitting in habeas corpus."); *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S. Ct. 3092, 3102 (1990). "Petitioner has no state-created interest in having the Michigan Sentencing Guidelines applied rigidly in determining his sentence." *Mitchell v.*

20

*Vasbinder*, 644 F. Supp. 2d 846, 867 (E.D. Mich. 2009). Thus, Petitioner has no federal constitutional claim with respect to any alleged error in departing above the guideline range.

Lastly, Petitioner's sentence comports with the terms of his plea agreement and is within the statutory maximum of life imprisonment for the offense of conviction. Habeas relief is not warranted on this claim.

## B.     Ineffective Assistance of Counsel

In his second set of claims, Petitioner asserts that defense counsel was ineffective for failing to file various pre-trial motions, for deciding not to call Dr. Werner Spitz, an expert witness, if the case proceeded to trial, for inducing Petitioner's plea based upon erroneous advice, for failing to object to errors in the pre-sentence report, and for failing to move to enforce the plea agreement.

Petitioner's claims concerning defense counsel's conduct during the pre-plea period – namely the failure to file various motions and his decision not to call Dr. Spitz – are foreclosed by his plea. It is well-established that claims about the deprivation of constitutional rights that occur before the entry of a plea are waived by that plea. *See, e.g.*, *United States v. Broce*, 488 U.S. 563, 569, 109 S. Ct. 757, 762 (1989). As the Supreme Court explained:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent

21

claims relating to the deprivation of constitutional rights that occurred
prior to the entry of the guilty plea. He may only attack the voluntary
and intelligent character of the guilty plea by showing that the advice
he received from counsel was not within [constitutional standards].

*Tollett v. Henderson*, 411 U.S. 258, 267, 93 S. Ct. 1602, 1608 (1973); *see also*

*Broce*, 488 U.S. at 569, 109 S. Ct. at 762. Given that this Court has already

determined that Petitioner's plea was knowing, intelligent, and voluntary on the

record before it, Petitioner's claims regarding counsel's pre-plea conduct are

foreclosed by Supreme Court precedent.

Next, Petitioner asserts that defense counsel was ineffective for inducing

him to plead no contest based upon erroneous advice. The effectiveness of counsel

rests upon the now-familiar two-component performance and prejudice framework

first enunciated in *Strickland v. Washington*:

> First, the defendant must show that counsel's performance was
> deficient. This requires showing that counsel made errors so serious
> that counsel was not functioning as the "counsel" guaranteed by the
> Sixth Amendment. Second, the defendant must show that the
> deficient performance prejudiced the defense.

466 U.S. 668, 687, 104 S. Ct. 2053, 2064 (1984).

To demonstrate counsel's deficient performance, Petitioner "must show that

counsel's representation fell below an objective standard of reasonableness." *Hill*

*v. Lockhart*, 474 U.S. 52, 57-58, 106 S. Ct. 366, 369 (1985) (quoting *Strickland*,

466 U.S. at 688, 104 S. Ct. at 2064). Objective reasonableness is defined by

reference to prevailing professional norms. *Rickman v. Bell*, 131 F.3d 1150, 1154

22

(6th Cir. 1997) (citing *Strickland*, 466 U.S. at 688, 104 S. Ct. at 2065). To escape the "distorting effects of hindsight," counsel's performance must be assessed according to "counsel's perspective at the time[]" of the challenged conduct. *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065. Given the inherent difficulty in making this retrospective determination, the Court must "indulge a strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance." *Id.*

If a habeas petitioner satisfies a reviewing court that counsel's performance was deficient, a petitioner must then demonstrate that counsel's performance resulted in prejudice. Courts measure prejudice in the plea bargaining context by asking whether "there is a reasonable probability that, but for counsel's errors, the defendant would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59, 106 S. Ct. at 370. An assessment of whether a petitioner would have gone to trial but for counsel's errors "will depend largely on whether the affirmative defense [a petitioner intended to invoke] likely would have succeeded at trial." *Id.* at 59, 106 S. Ct. at 371.

Importantly, when confronted with a case containing the procedural posture presented here – a federal district court reviewing an ineffective assistance of counsel claim adjudicated on the merits and denied by a state court by way of federal habeas relief pursuant to 28 U.S.C. § 2254(d) – courts must not conflate the

"highly deferential" standards independently created by *Strickland* and § 2254(d). *Harrington*, 131 S. Ct. at 788 (citations omitted).  Instead, "when the two [standards] apply in tandem," courts must apply a "doubly" deferential standard. *Id.* (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420 (2009)).

This doubly deferential standard is arguably even more deferential in a case such as this where the ineffective assistance claim presented on habeas review rests on a petitioner's assertion that trial counsel was constitutionally-ineffective in advising his or her client to accept the prosecution's plea offer.  Given the finality interest underlying the plea bargaining process, guilty and no contest pleas are not easily retracted once they have been accepted by a court.  The principles on which the structure of plea bargaining rely "are eroded if a guilty plea is too easily set aside based on facts and circumstances not apparent to a competent attorney when actions and advice leading to the plea took place."  *Premo v. Moore*, 562 U.S. __, 131 S. Ct. 733, 741 (2011); *Bray v. Andrews*, 640 F.3d 731, 738 (6th Cir. 2011).

Assessing counsel's performance in the context of a guilty plea is no simple task as "[p]lea bargains are the result of complex negotiations suffused with uncertainty, and defense attorneys must make careful strategic choices in balancing opportunities and risks."  *Premo*, 131 S. Ct. at 741.  "The opportunities[] include pleading to a lesser charge and obtaining a lesser sentence, as compared with what

24

might be the outcome []at trial[.]" *Id.* The risks associated with negotiating plea agreements include the "obvious" risk of "losing the chance for a defense verdict," as well as entering an agreement before "the prosecution finds its case is getting weaker, not stronger." *Id.* In recognition of the intricacies of this risk-reward analysis, the Supreme Court has admonished that "strict adherence to the *Strickland* standard [is] all the more essential when reviewing the choices an attorney made at the plea bargain stage." *Id.*

The record in this case does not support Petitioner's claim that defense counsel's erroneous sentence calculation induced his plea. At the plea hearing, the trial court informed Petitioner that he faced a maximum sentence of life imprisonment and that the parties agreed that he would be sentenced on the HO2 line on the C grid for manslaughter as part of his plea deal. There was no agreement as to his specific sentence. While defense counsel estimated that Petitioner's minimum sentence would be 43 to 107 months imprisonment with a 15-year maximum sentenced based upon his scoring of the guidelines, there is no indication that this estimation was a guarantee. Rather, the record indicates that counsel's estimate was thrown off because the court disagreed with his scoring of the offense variables, *i.e.*, Offense Variable 10. Because most sentences are not calculated until after a conviction, the ultimate sentence imposed is merely part of the usual uncertainty accompanying sentencing.

25

Furthermore, Petitioner is not entitled to habeas relief even if he was

misinformed by counsel.  A trial court's proper plea colloquy cures any

misunderstandings that a defendant may have about the consequences of a plea.

*Ramos*, 170 F.3d at 565; *Yukins*, 99 F. App'x at 703.  The trial court conducted a

proper colloquy.  The court reviewed the terms and consequences of the plea,

including the possible sentence.  The court verified that there was a plea agreement

for Petitioner to plead no contest to second-degree murder in exchange for a

sentence on the HO2 line on the C grid for manslaughter and Petitioner agreed that

he understood the plea agreement and its consequences.  Petitioner has not shown

that his no contest plea was invalid.  Any claim that counsel (or anyone else)

pressured him into accepting a plea conflicts with his sworn testimony at the plea

hearing indicating that he wished to plead no contest and that he understood that by

pleading, he was giving up any right to claim that he was pressured into pleading

or that he was promised anything in exchange for his plea.  As aptly stated by the

Sixth Circuit when faced with a challenge to a plea bargain based upon alleged off-

the-record statements:

> If we were to rely on [the petitioner's] alleged subjective impression
> rather than the record, we would be rendering the plea colloquy
> process meaningless, for any convict who alleges that he believed the
> plea bargain was different from that outlined in the record could
> withdraw his plea, despite his own statements during the plea
> colloquy . . . indicating the opposite.  This we will not do, for the plea
> colloquy process exists in part to prevent petitioners . . . from making
> the precise claim that is today before us.  "[W]here the court has

26

> scrupulously followed the required procedure, the defendant is bound
> by his statements in response to that court's inquiry."

*Ramos*, 170 F.3d at 566 (quoting *Baker v. United States*, 781 F.2d 85, 90 (6th Cir.

1986)).  Petitioner has failed to show that counsel was ineffective in advising him

about his plea.

Further, assuming for the sake of argument that counsel was deficient in

advising Petitioner to accept the plea agreement, Petitioner has failed to

demonstrate that that had he insisted on going to trial, he would have been

acquitted or that he would have received a lesser sentence on the first-degree

murder charge than he did by pleading no contest to second-degree murder and

agreeing to be sentenced on the manslaughter grid.  First, Petitioner has not shown

that he had a viable self-defense claim that would have resulted in acquittal.

During the second day of Petitioner's preliminary examination, the state introduced

damaging testimony calling into question the veracity of any such defense and the

state trial judge read this testimony into the record at the plea hearing.  This

testimony indicated that "Defendant told Padgett . . . that he had actually stuck

himself in the side with a knife to make it appear that Mr. Easter had tried to stab

him so that he could claim the whole incident was a self-defense type of situation."

(4/21/09 Plea Hrg. Tr. 26.)  This testimony would undoubtedly cause any fact-

finder to question the legitimacy of Petitioner's claim of self-defense, as would the

fact that Petitioner drove Mr. Easter to the hospital, where Mr. Easter ultimately

died, but did not seek treatment for his injury.  Second, a cursory review of Michigan's sentencing guidelines precludes any claim that Petitioner would have received a lesser sentence had he been convicted of first-degree murder. Accordingly, Petitioner cannot demonstrate prejudice.

Petitioner also asserts that defense counsel was ineffective for failing to object to errors in the pre-sentence report and the scoring of several sentencing variables.  Petitioner claims that the pre-sentence report was inaccurate because it listed several misdemeanor convictions which should have been stricken because he was not represented by counsel in those cases and because two of the convictions were for the same case.  Petitioner provides no evidence to support the alleged inaccuracies.  Conclusory allegations are insufficient to demonstrate ineffectiveness of counsel and do not justify habeas relief.  *Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998).  Moreover, Petitioner did not raise this matter at the sentencing hearing despite having the opportunity to do so.  In fact, after discussing the second habitual offender issue, Petitioner stated that he had no corrections to the pre-sentence reports.  Petitioner has failed to establish that counsel was ineffective.

Petitioner relatedly claims that Prior Record Variable 2 was mis-scored at 20 points due to the inclusion of unrepresented misdemeanor convictions.  Again, this claim is conclusory and does not justify habeas relief.  Petitioner claims that

28

Offense Variable 3 was mis-scored at 25 points for causing life threatening injuries to the victim. This claim lacks merit given that Mr. Easter died from the injuries inflicted by Petitioner's beating. Petitioner claims that Offense Variable 5 was mis-scored at 15 points for causing serious psychological injury that may require professional treatment. The victim's brutal death and its effect on his family were sufficient to justify the scoring of this variable, even if such treatment was not actually sought. Petitioner claims that Offense Variable 6 was mis-scored at 25 points for having an unpremeditated intent to kill, to do great bodily harm, or for creating a very high risk of death or great bodily harm knowing that death or great bodily harm was the probable result. This claim lacks merit given that Petitioner beat Mr. Easter, an older and partially-disabled man, in the face and body so severely that he died from his injuries. Petitioner has thus failed to demonstrate that the disputed offense variables were incorrectly scored.

Additionally, Petitioner claims that counsel failed to object to Offense Variable 10; however, the record indicates that defense counsel did object to the scoring of this variable. (6/1/09 Sent'g Tr. 18.) That the trial court rejected counsel's argument does not suggest ineffectiveness as Petitioner has not shown what more counsel could have done. He has thus failed to establish that counsel was ineffective in this regard.

Assuming *arguendo* that the failure to object to the items discussed above amounted to deficient performance, which it did not, Petitioner cannot demonstrate any resulting prejudice as counsel cannot be deemed ineffective for failing to make a futile objection or argue a meritless position. *United States v. Steverson*, 230 F.3d 221, 225 (6th Cir. 2000).

Lastly, Petitioner asserts that defense counsel was ineffective for failing to seek enforcement of the plea agreement. This claim is based upon a faulty premise, namely that the agreement was not enforced. Moreover, it is belied by the record which shows that the court sentenced Petitioner in accordance with the plea agreement. Petitioner has failed to establish that counsel was ineffective under *Strickland*. Habeas relief is not warranted.

## IV.   CERTIFICATE OF APPEALABILITY

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254; *see also* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). Title 28 U.S.C. § 2253 governs appeals in § 2254 proceedings and provides, in pertinent part: "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In explaining the meaning of a "substantial showing" necessary to receive of a certificate of appealability, the Supreme Court has explained that when

a district court denies a habeas petition on the merits of the claims presented, a certificate may issue if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 1604 (2000); *see also Miller-El v. Cockrell*, 537 U.S. 322, 327, 123 S. Ct. 1029, 1034 (2003) ("A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.").

For the reasons stated in this Opinion and Order, the Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right.  Therefore, a certificate of appealability shall not issue in this case.  *Steele v. Withrow,* 157 F. Supp. 2d 734, 743 (E.D. Mich. 2001).  The Court further concludes that Petitioner should not be granted leave to proceed *in forma pauperis* on appeal as an appeal cannot be taken in good faith.  *See* Fed. R. App. P. 24(a).

## V.   CONCLUSION AND ORDER

Having reviewed the matter, and for the reasons stated herein, the Court concludes that the state courts' denial of relief is neither contrary to Supreme Court precedent nor an unreasonable application of federal law to the facts.  The Court further concludes that Petitioner has not rebutted the presumption of correctness that applies to the state courts' factual findings.  As such, Petitioner is not entitled to federal habeas relief.

31

Accordingly,

Petitioner's application for writ of habeas corpus is **DENIED**.  Further,

leave to proceed *in forma pauperis* on appeal is **DENIED** and a certificate of

appealability **SHALL NOT ISSUE**.

**IT IS SO ORDERED**.


Dated:  February 18, 2014

                                          s/PATRICK J. DUGGAN
                                          UNITED STATES DISTRICT JUDGE

Copies to:

**Christopher Cousino**, # 310603
Kinross Correctional Facility
16770 S. Watertower Drive
Kincheloe, MI 49788

**David H. Goodkin, A.A.G.**